UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| PHYLLIS FRANK, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Case No. 17-2773 (RJL) |
| | ) | |
| AUTOVEST, LLC, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**FILED**

**SEP 3 0 2019**

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

MEMORANDUM OPINION

(September **27**, 2019) [Dkt. # 34]

Phyllis Frank brings this putative class action against Autovest, LLC ("Autovest") and Michael Andrews & Associates ("MAA") for actual and statutory damages under the Fair Debt Collection Practices Act ("FDCPA" or "the Act"), 15 U.S.C. § 1692 *et seq.* Frank claims that Autovest and MAA (collectively, "defendants") violated the FDCPA in a debt-collection action initiated by Autovest against Frank. *See* Am. Compl. ¶¶ 47-69 [Dkt. # 27].

Pending before me is defendants' motion for summary judgment. *See* Defs.' Mot. for Summ. J. ("Defs.' Mot.") [Dkt. # 34]. Upon consideration of the briefing, the relevant law, and the entire record herein, and for the reasons stated below, defendants' motion for summary judgment is **GRANTED**.

1

## BACKGROUND

On May 5, 2011, Frank executed a Retail Installment Sale Contract ("Contract") with Monster Auto Credit ("MAC") to purchase a 2008 Chevrolet Impala. Defs.' Statement of Undisputed Material Facts ("Defs.' SOF") ¶ 1 [Dkt. # 41-1]; Pl.'s Statement of Disputed Material Facts ("Pl.'s SOF") ¶ 1 [Dkt. # 44-2]. MAC immediately assigned its interest in the Contract to First Investors Financial Services ("FIFS"). Defs.' SOF ¶ 2; Pl.'s SOF ¶ 2. Frank defaulted on the loan in August 2014, and FIFS repossessed the vehicle in August 2015. Defs.' SOF ¶ 4; Pl.'s SOF ¶ 4; Defs.' Mot., Ex. 15 at 12. At some point during this time period, FIFS assigned the Contract to First Investors Auto Receivables ("FIAR"). Defs.' SOF ¶ 3; Pl.'s SOF ¶ 3. In May 2016, FIAR reassigned the Contract back to FIFS. Defs.' SOF ¶ 5; Pl.'s SOF ¶ 5; Defs.' Mot., Ex. 31. FIFS then sold the Contract back to Autovest on May 31, 2016. Defs.' SOF ¶ 6, 7. Indeed, FIFS notified Frank by letter on June 1, 2016 that it had assigned the Contract to Autovest. Defs.' SOF ¶ 7; Pl.'s SOF ¶ 7.

On October 4, 2016, Autovest filed a collections complaint against Frank in the Superior Court for the District of Columbia ("the Collections Action"), seeking a judgment for the outstanding balance on the loan, *i.e.*, $8,557.53 plus interest. Defs.' SOF ¶ 13; Pl.'s SOF ¶ 13; Defs.' Mot., Ex. 4 at 2, 3. Autovest attached a verification to its complaint, which stated as follows:

> Christina Dunn, agent/officer/employee of the Plaintiff, being first duly sworn on oath, . . . affirms and states that he/she has authority to verify the attached complaint and verily believes the facts stated therein to be a true statement of the amount owing by the Defendants to the Plaintiff, exclusive of all set-offs and just grounds for defense.

2

Defs.' Mot., Ex. 15 at 17; Defs.' SOF ¶¶ 15-16; Pl.'s SOF ¶¶ 15-16. At the time the verification was executed, Christina Dunn ("Dunn") was an employee of MAA, which acted as Autovest's servicing agent on Frank's loan. Defs.' SOF ¶¶ 8, 17; Pl.'s SOF ¶¶ 8, 17.

On February 27, 2017, Frank filed an answer in the Collections Action, using a boilerplate court-issued form. Defs.' Mot., Ex. 6 at 5. The form directed Frank to state the reasons why "plaintiff was not entitled to have judgment as demanded." *Id.* Frank provided the following answer: "The company failed to notify me of the impending sale of the vehicle, a forwarding address was given the company (FIFSG) to send any and all information and mail about any impending actions." *Id.*; Defs.' SOF ¶ 21; Pl.'s SOF ¶ 21. At the top of the form, Frank filled in Autovest's name and address. Defs.' Mot., Ex. 6 at 5. She did not indicate that Autovest was not her creditor or that it was otherwise not entitled to enforce the debt. Defs.' SOF ¶ 22; Pl.'s SOF ¶ 22.

On April 25, 2017, Autovest filed a motion for default judgment in the Collections Action. Defs.' Mot., Ex. 7. The motion attached an affidavit by Glenn E. Deuman ("Deuman"), which outlined the facts underlying the Collections Action, including: the loan to Frank, the subsequent assignment of the Contract to Autovest, Frank's default, the repossession of the vehicle, and the amount still due under the Contract. Defs.' SOF ¶ 23; Pl.'s SOF ¶ 23; Defs.' Mot., Ex. 7 at 9-11. Deuman further attested that he was "employed by Autovest, LLC." Defs.' Mot., Ex. 7 at 9.

The motion for default judgment also attached an affidavit for attorneys' fees executed by Autovest's attorney, Robert Wagman ("Wagman"). Defs.' Mot., Ex. 7 at 41-

42. Wagman stated that his representation of Autovest was on a "contingency fee basis." Defs.' SOF ¶ 30; Pl.'s SOF ¶ 30. He then described the specific legal tasks performed in connection with the Collections Action, the amount of time spent on each task, and the hourly rate of each individual that worked on the tasks. Defs.' SOF ¶ 31; Pl.'s SOF ¶ 31. The affidavit sought $895.00 in fees, a lodestar amount computed by multiplying the total hours worked by the applicable hourly rates. Defs.' SOF ¶¶ 44, 47; Pl.'s SOF ¶¶ 44, 47. That amount was not a contingent fee based on the total debt owed by Frank. Defs.' SOF ¶ 47; Pl.'s SOF ¶ 47. Ultimately, Autovest did not collect any money from Frank in the Collections Action. Defs.' SOF ¶ 45; Pl.'s SOF ¶ 45.

On December 23, 2017, Frank brought this action, claiming that defendants' conduct in the Collections Action violated the FDCPA. *See* Compl. at 7-10 [Dkt. #1]. On September 24, 2018, she amended her complaint, *see* Am. Compl., and on February 12, 2019, defendants moved for summary judgment, *see* Defs.' Mot. That motion is fully briefed and ripe for decision.

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Material facts are those "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The court "must view the evidence in the light most

favorable to [the nonmoving party], draw all reasonable inferences in [her] favor, and eschew making credibility determinations or weighing the evidence." *Lathram v. Snow*, 336 F.3d 1085, 1088 (D.C. Cir. 2003). Nevertheless, if the nonmoving party presents facts that are contradicted by the record, such that no reasonable jury could believe them, "a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

The FDCPA "imposes civil liability on debt collectors for certain prohibited debt collection practices." *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 576 (2010) (brackets and quotation marks omitted). It proscribes, among other things, "any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt," 15 U.S.C. § 1692d, the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt," *id.* § 1692e, and the use of "unfair or unconscionable means to collect or attempt to collect any debt," *id.* § 1692f.

To establish a claim under the FDCPA, a private plaintiff "must establish that: (1) the defendant is a 'debt collector'; (2) who took an action 'in connection with the collection of a[ ] debt'; and (3) the action violated the substantive proscriptions in those provisions." *Lipscomb v. The Raddatz Law Firm, P.L.L.C.*, 109 F. Supp. 3d 251, 256 (D.D.C. 2015); *see also Mazza v. Verizon Washington DC, Inc.*, 852 F. Supp. 2d 28, 35 (D.D.C. 2012). Defendants no longer appear to dispute that they are "debt collectors," nor that they "took an action in connection with the collection of a debt." Thus, for purposes of their summary judgment motion, I need only evaluate whether defendants are entitled to judgment as a

matter of law with respect to their alleged violations of the "substantive proscriptions" of the Act.

Our Circuit Court has yet to explicitly address the standard for evaluating whether particular conduct violates the substantive provisions of the FDCPA. It has, however, affirmed this Court's application of an objective standard to FDCPA claims based on the "least sophisticated consumer." *Jones v. Law Office of David Sean Dufek*, 77 F. Supp. 3d 134, 138 (D.D.C. 2015) (Leon, J.), *aff'd sub nom. Jones v. Dufek*, 830 F.3d 523 (D.C. Cir. 2016). As numerous courts have held, that standard considers "whether the least sophisticated debtor would likely be misled by the communication." *Lipscomb*, 109 F. Supp. 3d at 263 (quotation marks omitted); *see also Mazza*, 852 F. Supp. 2d at 36; *Cohen v. Rosicki, Rosicki & Assocs., P.C.*, 897 F.3d 75, 85 (2d Cir. 2018); *Jensen v. Pressler & Pressler*, 791 F.3d 413, 420 (3d Cir. 2015); *Powell v. Palisades Acquisition XVI, LLC*, 782 F.3d 119, 126 (4th Cir. 2014); *Currier v. First Resolution Inv. Corp.*, 762 F.3d 529, 533 (6th Cir. 2014); *Crawford v. LVNV Funding, LLC*, 758 F.3d 1254, 1258 (11th Cir. 2014); *Tourgeman v. Collins Fin. Servs., Inc.*, 755 F.3d 1109, 1119 (9th Cir. 2014). Although that standard is "lower than simply examining whether particular language would deceive or mislead a reasonable debtor," *Tourgeman*, 755 F.3d at 1119, it "presum[es] a basic level of reasonableness and understanding on the part of the debtor," *Currier*, 762 F.3d at 533.

Other circuits, as well as one of my colleagues on this Court, have also imposed a materiality requirement on FDCPA claims. *Lipscomb*, 109 F. Supp. 3d at 264 (Boasberg, J.) (citing *Hahn v. Triumph Partnerships, LLC*, 557 F.3d 755, 757 (7th Cir. 2009); *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1033 (9th Cir. 2010)). Those courts reason that the

allegedly misleading or deceptive conduct must be material to a consumer's decision-making regarding a debt because "[t]he statute is designed to ... help[ ] consumers ... choose intelligently, and by definition immaterial information neither contributes to that objective (if the statement is correct) nor undermines it (if the statement is incorrect)." *Hahn*, 557 F.3d at 757–58. Courts are thus "not concerned with mere technical falsehoods that mislead no one, but instead with genuinely misleading statements that may frustrate a customer's ability to intelligently choose his or her response." *Donohue*, 592 F.3d at 1034. In other words, because "immaterial statements, by definition, do not affect a consumer's ability to make intelligent decisions," *id.*, they cannot mislead, and "a false but non-material statement is not actionable," *Hahn*, 557 F.3d at 758; *see also Jensen*, 791 F.3d at 421 ("[A] false statement is only actionable under the FDCPA if it has the potential to affect the decision-making process of the least sophisticated debtor; in other words, it must be *material* when viewed through the least sophisticated debtor's eyes."); *Miller v. Javitch, Block & Rathbone*, 561 F.3d 588, 596 (6th Cir. 2009) (concluding that a false but non-material statement is not actionable). I find this reasoning persuasive, and I will apply the materiality standard to Frank's claims.

## DISCUSSION

Frank alleges that defendants violated the FDCPA in the underlying Collections Action by misrepresenting that Autovest was assigned the Contract, by using a false verification and false affidavit to seek default judgment against Frank, and by attempting to collect contingency-based attorneys' fees. *See* Am. Compl. ¶¶ 47-69. Defendants

7

contend that summary judgment in their favor is warranted as to all of Frank's claims because none of the alleged misrepresentations were misleading. I agree.

### A. Assignment of the Loan

Frank first claims defendants misrepresented that FIFS assigned the Contract to Autovest because FIFS in fact assigned the contract to FIAR. Am. Compl. ¶¶ 47, 51, 55, 60, 66. This theory fails on the evidence alone. As the record shows, FIFS initially assigned the Contract to FIAR, and FIAR subsequently reassigned the Contract back to FIFS in May 2016. Defs.' SOF ¶¶ 3, 5; Pl.'s SOF ¶¶ 3, 5; Defs.' Mot., Ex. 31 at 1. FIFS then assigned the Contract to Autovest. Defs.' SOF ¶ 6, 7. Frank does not, and could not, seriously dispute this chain of events. Instead, she points to the fact that FIFS securitized the loan before assigning it to Autovest. Pl.'s SOF ¶¶ 6, 7. But that, of course, has nothing to do with whether Autovest owned the loan when it sought to collect Frank's outstanding debt. Nor can Frank reasonably claim she was unaware of the assignment to Autovest at the time of the Collections Action. Defs.' SOF ¶ 12; Pl.'s SOF ¶ 12; Defs.' Mot., Ex. 9, Dep. Tr. Frank, 51:7-52:5, 94:8-18.[1] Accordingly, Autovest's representations that it was

---

[1] Although Frank claims she did not receive any letters from defendants regarding the sale to Autovest at the time it occurred, she testified that she received copies of June 2016 letters as part of the Collections Action. Defs.' SOF ¶ 12; Pl.'s SOF ¶ 12; Defs.' Mot., Ex. 9, Dep. Tr. Frank, 51:7-52:5, 94:8-18. Those letters stated ownership of the loan was transferred from FIAR to Autovest. Defs.' Mot., Exs. 13, 14.

8

the assignee of FIFS were *not* misleading, and Frank's claimed violation on that basis cannot survive summary judgment.

Undaunted, Frank attempts to reframe this claim in her summary judgment papers, arguing that Autovest's representations in the underlying Collections Action were misleading because Autovest failed to report the Contract's "complete chain of title." Pl.'s Opp'n to Mot. for Summ. J. ("Opp'n") at 12 [Dkt. # 44]. Specifically, Frank points to Deuman's affidavit, which was filed in support of Autovest's motion for default judgment and affirms that "Monster Auto Credit assigned the contract to First Investors Financial Services ('First Investors'), who then sold the account to Autovest." Defs.' Mot. Ex. 7 at 9 ¶ 5. Frank contends Deuman's statement is misleading because it is incomplete: Frank's loan was securitized by FIFS before it was transferred to Autovest, and securitization is a "complex financial arrangement" involving additional assignments of the Contract that Deuman did not disclose. Opp'n at 13-14.

To say the least, I am similarly unpersuaded by Frank's revamped claim. Nowhere in her Amended Complaint did Frank suggest that Deuman's affidavit was misleading because it failed to include the "complete chain of title" or otherwise describe the securitization of Frank's loan. But even considering Frank's new theory at summary judgment, her claim does not survive because Deuman's affidavit is *not* misleading. MAC *did* assign the Contract to FIFS, and FIFS *did* sell it to Autovest. And contrary to Frank's assertions, the affidavit does not purport to describe the "complete chain of title" and then do so inaccurately. *See* Opp'n at 14. It simply states that MAC assigned the Contract to FIFS, which then sold it to Autovest.

9

If that were not enough to reject Frank's claim, information about the "complete" chain of title was immaterial, and Autovest's failure to include it in the Deuman Affidavit was not—by definition—likely to mislead the least sophisticated consumer. *See Donohue*, 592 F.3d at 1034. The salient information for Frank in the Collections Action was the nature of the debt owed, the amount, and the identity of the debt collector. Deuman's affidavit provided that information. Details about the securitization of the loan, however, were irrelevant, and their exclusion from the affidavit did nothing to "undermine [Frank's] ability to intelligently choose her action concerning her debt." *Donohue*, 592 F.3d at 1034.[2] Indeed, a description of the securitization of the loan prior to Autovest's ownership would have likely only increased a consumer's confusion regarding the nature of the debt in this instance. *See Cohen*, 897 F.3d at 86 (observing that providing additional information to the consumer, though accurate, would likely cause confusion). Indeed, as is often the case: less is more!

### B. The Dunn Verification and the Deuman Affidavit

Frank next asserts that defendants' statements in two pleadings in the Collections Action give rise to FDCPA liability. Frank points to (1) the verification attached to Autovest's collections complaint against Frank; and (2) the affidavit attached to Autovest's

---

[2] Indeed, the evidence demonstrates that Frank *was* able to make intelligent choices about how to act concerning her debt: she answered Autovest's complaint and described the reasons why a judgment should not be entered against her. In her words, Autovest had "failed to notify [her] of the impending sale of the vehicle." Defs.' Mot. Ex. 6 at 5. Tellingly, Frank did not indicate she was confused as to what Autovest was, or why it was seeking payment. And nowhere did Frank indicate she thought she was "being scammed to pay a debt [she] didn't owe." *Id.* Ex. 8 at 5 (Frank's Answers to Interrogatories). Quite to the contrary, Frank's answer demonstrates that she knew precisely the debt that was being sought and why.

10

motion for default judgment. Opp'n at 8-11. She argues that the verification and the affidavit are misleading because Dunn and Deuman claimed to be employees of Autovest, when they were in fact employees of MAA. Am. Compl. ¶¶ 48, 49, 52, 53, 56, 57, 61, 62, 64, 65.

Both of those documents, however, contain, at most, false non-material statements that are not actionable under the FDCPA. *See Donahue*, 592 F.3d at 1033. Whether Dunn and Deuman were employed by Autovest or MAA had *no* effect on Frank's ability to respond to or dispute the debt sought in the Collections Action. Dunn and Deuman were seeking to collect the unpaid balance of Frank's loan on behalf of Autovest. Even assuming representations about Dunn's and Deuman's employer were false, they were the type of "mere technical falsehoods that mislead no one" and do not give rise to FDCPA liability. *Id.* at 1034.

Frank's arguments to the contrary are, not surprisingly, unconvincing. She first contends that Dunn and Deuman misrepresented the identity of the debt collector by stating they were employed by Autovest. Opp'n at 8-9. But Frank conflates two separate issues. Defendants accurately represented that Autovest was the debt collector, and statements about Dunn's and Deuman's employer do not contradict or undermine that representation. Frank next contends that she was "not confused by what debt was at issue, but to whom it was owed." Opp'n at 19. That claim is contradicted by the record. Frank answered Autovest's complaint, objecting to any judgment against her because, in her view, she was not properly notified of the sale of her vehicle in 2015. *See* Defs.' Mot. Ex. 6 at 5. Nowhere

did she dispute the nature of the debt or its amount, let alone express any confusion as to what Autovest was or why it was seeking to collect on her debt.[3]

### C. Request for Attorneys' Fees

Finally, Frank alleges that the defendants violated the FDCPA when they attempted to collect contingency-based attorneys' fees in the underlying Collections Action. *See* Opp'n at 15-17 (citing 18 U.S.C. § 1692f(1)). In Frank's view, although the Contract permitted Autovest to seek reasonable attorneys' fees if it hired an attorney to collect on Frank's debt, it did not authorize Autovest to collect contingency-based fees. Opp'n at 15. Frank argues that such fees violate the FDCPA. *Id.*

I need not decide whether the Contract permitted contingency fees nor whether such fees violate the FDCPA for a simple reason: Autovest did not seek them. Defs.' SOF ¶¶ 44, 47; Pl.'s SOF ¶¶ 44, 47. Although Wagman's affidavit referred to his contingency-fee arrangement with Autovest, it computed the total fees sought by multiplying the total hours worked by the applicable rates. Defs.' SOF ¶¶ 44, 47; Pl.'s SOF ¶¶ 44, 47. Thus, as Frank admits, the fees sought were not contingency fees based on the outstanding debt Frank owed Autovest. Pl.'s SOF ¶ 47. In fact, Autovest did not ultimately collect *any* fees from Frank, let alone contingency fees. Defs.' SOF ¶ 45; Pl.'s SOF ¶ 45. As to the cases Frank

---

[3] In her Amended Complaint, Frank also claims defendants engaged in conduct designed to annoy, harass, or abuse Frank in violation of § 1692d, including by "[c]ausing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number." *See* § 1692d(5); *see also* Am. Compl. ¶¶ 47-54 (citing § 1692d(5)). On summary judgment, Frank makes one passing reference to § 1692d in the standard section of her opposition. Opp'n at 7. The record is devoid, however, of any facts tending to show defendants engaged in harassing or abusive conduct. Thus, to the extent Frank seeks to raise claims independent from defendants' allegedly misleading representations, those claims likewise fail.

cites, they are not applicable. *See* Opp'n at 15 n.85. They all address circumstances in which the defendant in fact charged, or tried to charge, an impermissible fee. *See id.* But Autovest did not do so here. Nor does Frank plausibly argue that the fees were otherwise unreasonable. She contends Wagman's fees were not reasonable because he used an hourly rate of $300, when he had elsewhere agreed to represent Autovest at a rate of $250 in the event any counterclaim was filed in the Collections Action. But no counterclaim was filed in the Collections Action, and Wagman's counterclaim rate is therefore irrelevant.[4]

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is **GRANTED**. A separate order consistent with this decision accompanies this Memorandum Opinion.

RICHARD J. LEON
United States District Judge

---

[4] Frank's claim under D.C. law, which was not properly raised in her Amended Complaint, fails for the same reasons. Opp'n at 16-17; *see Jones v. Dufek*, 830 F.3d 523, 528 (D.C. Cir. 2016).

13